<u>**NOT FOR PUBLICATION**</u>

**FILED**

JAMES J. WALDRON, CLERK

**APRIL 5, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: <u>s/ Ronnie Plasner,</u> DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In Re:<br><br>**MITCHELL SUAREZ, A.K.A. INTERNATIONAL MILL PRODUCTS, INC., INTERNATIONAL MILL PRODUCTS INCORPORATED,**<br><br>                Debtor.<br><br>**JRC LUMBER CORP.,**<br>            Plaintiff,<br><br>    v.<br><br>**MITCHELL SUAREZ,**<br><br>            Defendant. | Case No.: 08-15732  (DHS)<br><br>Adv. No.: 08-1713  (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J. |

## <u>OPINION</u>

**APPEARANCES:**

Kopelman & Kopelman L.L.C.
Michael S. Kopelman, Esq.
55 Main Street
Hackensack, New Jersey 07601
***Counsel for Defendant/Debtor, Mitchell Suarez***

Broege, Neumann, Fischer & Shaver, L.L.C.
Peter J. Broege, Esq.
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
***Counsel for Plaintiff, JRC Lumber Corp.***

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment.  On July 3, 2008,  judgment creditor JRC Lumber Corp. ("Plaintiff") filed an adversary complaint against chapter 7 debtor, Mitchell Suarez ("Defendant"), seeking a determination that its claim is nondischargeable under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.  The Plaintiff thereafter filed the instant motion for summary judgment against the Defendant contending specifically that the debt owed to it by the Defendant arose from the Defendant's commission of: (1) actual fraud or false pretenses; (2) fraud or defalcation while acting in a fiduciary capacity towards the Plaintiff; and (3) a "willful and malicious" injury upon the Plaintiff.

The Defendant filed a Certification in Opposition to Plaintiff's Motion for Summary Judgment, a Response to Plaintiff's Statement of Material Facts Not in Dispute, and a Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, in which he argued that: (1) collateral estoppel cannot be invoked in establishing that the Defendant engaged in actual fraud; (2) there was no fiduciary relationship between himself and the Plaintiff; and (3) his actions were not willful and malicious because he did not intend to harm the Plaintiff.

For any and all reasons stated hereafter, this Court concludes that the Plaintiff's claim is nondischargeable under § 523(a)(6) of the Bankruptcy Code.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  This is further a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The following shall constitute the Court's findings of fact and conclusions of law in accordance with the Federal Rules of Bankruptcy Procedure 7052.

3

## Statement of Facts and Procedural History

The Plaintiff is a family-owned lumber molding manufacturing business incorporated in the State of New York.[1]  (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 12).  In June 2003, the Plaintiff sold assets, namely machinery, the right to serve its customers, and lumber inventory, to JRC Millworks, Incorporated ("JRC Millworks"), a New York corporation co-owned by the Defendant's father, Julio Suarez ("Suarez").  (*Id.* at ¶ 15).  JRC Millworks and Suarez later defaulted on a promissory note given to the Plaintiff as partial payment for their purchase of machinery and the right to serve the Plaintiff's customers.  (*Id.* at ¶ 16).  JRC Millworks also defaulted on payments for lumber purchased from the Plaintiff, and a check intended for the Plaintiff was converted into a JRC Millworks bank account.  (*Id.*).

In March 2005, the Defendant began working for JRC Millworks for a period of approximately five months.  (Dep. of Mitchell Suarez, 9:5-25, March 6, 2007 (*Cohen Aff.*, ¶ 39, Ex. O)).  The Defendant did not have an official job title at the company; rather he worked as a "physical laborer."  (*Id.* at 10:3-25).  The Defendant further asserts that he did not do any "office work" for the company, though on occasion, he would answer the telephone.  (*Id.* at 11:8-11, 21:2-11).

In June 2005, JRC Millworks ceased operations at its location in Astoria, New York as a result of "cash flow problems."  (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 20; Dep. of Mitchell Suarez, 145:13-25, 146:1).  The Defendant was aware of these problems, as his father had previously told him that cash flow had become an issue.[2]  (*Id.* at 164:23-25, 165:1-3).

---

[1]J. Richard Cohen serves as president and sole shareholder of the company, while his son, Glenn Cohen, serves as the company's vice president.  (Aff. of Glenn S. Cohen in Supp. of Pl.'s Mot. for Partial Summ. J., ¶¶ 1, 2, 5) (hereinafter "Cohen Aff.").

[2]The Defendant later denied making any statements regarding JRC Millworks' "cash flow problems," claiming that at the time, he knew only that the company "had to move."  (Def's Resp. to Pl.'s Statement of Material Facts Not in Dispute, ¶ 43.)

The closing of JRC Millworks coincided with the formation of International Mill Products, Incorporated ("International Mill").[3]  (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 20).  The materials, machines, and customer lists previously used by JRC Millworks at the Astoria location were sent to the International Mills facility in Paterson, New Jersey for use in connection with that business.  (*Id.*; Dep. of Mitchell Suarez, 32:5-25; 62-9-23; 163:12-17).  No consideration was received by JRC Millworks in exchange for this transfer.  (Dep. of Mitchell Suarez, 163:12-17; Dep. of Janet Corona, 142:13-24, March 6, 2007 (Cohen Aff., ¶ 35, Ex. K) (stating that "[e]verthing was just transferred over," "[f]ree of charge")).

The Defendant, who has undergraduate and graduate degrees in accounting as well as one and one-half years of experience working as an auditor at Deloitte & Touche, LLP, served as International Mill's president.   (Pl.'s Stmt. of Mat. Facts Not in Disp., at ¶¶ 35-38).  Despite this title, however, the Defendant insists that his father was the "actual owner" of the company and made all of the business decisions.  (Def.'s Certif. in Opp'n to Pl.'s Mot. for Summ. J., ¶¶ 7, 11; Dep. of Mitchell Suarez, 27:18-25, 133:1-15).

In November 2005, International Mill ceased operations and a new and unrelated company, Erion and Farias Millworks Incorporated, began using the Paterson facility.  (Cohen Aff., ¶ 9).

## A.  State Court Judgments Involving the Defendant and the Defendant's Associates

On May 5, 2006, the Supreme Court of New York, New York County ("New York Court") entered judgment in favor of the Plaintiff and against JRC Millworks and Suarez in the amount of

---

[3]International Mill Products, Incorporated is a New Jersey corporation.  The Defendant also incorporated International Mill Products, Inc., a New York corporation, in December 2004.  (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 17).  The New York corporation never went into operation.  (Def.'s Resp. to Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 7).  Thus, hereinafter, references to "International Mill" pertain to the New Jersey corporation unless specified otherwise.

$151,902.74 for JRC Millworks' default on the promissory note given to the Plaintiff.  (New York Ct. J., May 5, 2006 (Cohen Aff., ¶ 29, Ex. E)).  Thereafter, on October 19, 2006, the same court entered another judgment against JRC Millworks in the amount of $309,790.22 for the company's failure to pay for goods and services received from the Plaintiff and to pay an account stated.  (New York Ct. J., Oct. 19, 2006 (Cohen Aff., ¶ 30, Ex. F)).[4]

On July 26, 2006, in a separate action between the Plaintiff and JRC Millworks, International Mill,[5] and Erion and Farias Millworks, Inc., the New York Court granted the Plaintiff's petition to set aside a transfer of assets from JRC Millworks to International Mill.  (New York Ct. J., Oct. 25, 2006 (Cohen Aff., ¶ 31, Ex. G)).[6]  The court found that the transfer of *any* assets between the two companies was null and void as a fraudulent conveyance under New York Debtor and Creditor Law § 276 ("§ 276").  (*Id.*).

Furthermore, in August 2007, the New York Court entered a default judgment in favor of the Plaintiff in which it pierced the corporate veils of JRC Millworks and International Mill[7] and held the Defendant and two others personally liable for the debts, acts, and omissions of both corporations ("the August 2007 judgment").  (New York Ct. J., Aug. 8, 2007 (Cohen Aff., ¶ 32, Ex. H)).  Specifically, the court determined that the three individuals were liable for: (1) the amounts of the October 19, 2006 judgment entered against JRC Millworks and Suarez; (2) JRC Millworks' fraudulent transfer of assets to International Mill; and (3) receiving fraudulent conveyances of assets from JRC Millworks and International Mill in violation of §§ 273 thru 276 of New York's Debtor

---

[4]Suarez was held personally liable for the amount of this judgment, as the court later pierced the corporate veil of JRC Millworks to reach his assets.  (New York Ct. J., Aug. 24, 2007 (Cohen Aff., ¶ 30, Ex. F)).
[5]The action was instituted against both International Mill Products, Inc. and International Mill Products, Incorporated.
[6]This decision was memorialized in an order dated October 25, 2006.
[7]This action involved both International Mill Products, Inc. and International Mill Products, Incorporated.

and Creditor Law.  (*Id.*).  The Defendant was properly served with process in this action and also

received several additional required notices from the time of service until the time of an attempted

garnishment of his wages.[8]  (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 28; Affs. of Alice and Henry

Dobson (Cohen Aff., ¶ 40, Ex. P)).

The Defendant moved to vacate the August 2007 judgment.  (Opp'n to Order to Show Cause

to Vacate Default J., at 7 (*Cohen Aff.*, ¶ 45, Ex. U)).  However, the appellate judge denied this

motion in light of the "extensive prior record" proving that the fraudulent transfers at issue had

occurred.  (New York Ct. J., Feb. 15, 2008 (Cohen Aff., ¶ 33, Ex. I)).

On March 31, 2008, the Defendant filed a petition for relief under Chapter 7 of the United

States Bankruptcy Code.  The Plaintiff instituted this adversary proceeding on July 3, 2008.

## Discussion

### I. Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made

applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  *Id.*  At the summary judgment stage, the role of

the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."

*Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986)).  In doing so, the court must construe facts and inferences in a light most

favorable to the non-moving party.  *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp.

---

[8]Although the Defendant was properly served with process, the Defendant contends that he did not contest
the allegations because he could not afford an attorney.  (Def.'s Certif. in Opp'n to Pl.'s Mot. for Summ. J., ¶ 14).

2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment

motion.  Accordingly, evidence whose foundation is deficient must be excluded from consideration."

*Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party bears the initial burden in showing that there is no genuine issue of

material fact.  *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)).  The burden then shifts to the non-moving party to "'establish the existence of [every]

element essential to the party's case, and on which that party will bear the burden of proof at trial.'"

*Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting

*Celotex Corp.*, 477 U.S. at 322).  The "mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48

(emphasis in original).

An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving

party.  *See id.* at 248.  The materiality of a fact is determined by the substantive law at issue.  *See*

*Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248).  A fact

is "material" if it might affect the outcome of the suit under governing law.  *Id.*  Disputes over

irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment.  *Anderson*,

477 U.S. at 248 (citation omitted).

Even if material facts remain disputed, summary judgment may be proper if, after all

inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as

a matter of law.  *Id.* at 248-50.  Such a judgment is appropriate "as a matter of law" when the non-

moving party has failed to make an adequate showing on an essential element of his or her case, as

to which he or she bears the burden of proof.  *See Celotex Corp.*, 477 U.S. at 322-23.  When one

party motions the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken

together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-

movant has not filed a cross-motion for summary judgment.  *See Peiffer v. Lebanon School Dist.*,

673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted).  On the other hand, a court must deny

a motion for summary judgment when a genuine issue of material fact remains to be tried, or where

the moving party is not entitled to a judgment as a matter of law.

## II.    New York Law – § 276 and Piercing the Corporate Veil

As stated above, the New York Court's August 2007 judgment pierced the corporate veils

of JRC Millworks and International Mill to hold the Defendant jointly and severally liable under

§ 276 for JRC Millworks' fraudulent transfer of assets to International Mill.  The same court also

held that the Defendant's receipt of fraudulent conveyances of assets violated §§ 273, 274, 275, and

276 of New York's Debtor and Creditor Law.

Sections 273 thru 275 of New York's Debtor and Creditor Law are constructive fraud

provisions, imposing liability where: (1) a conveyance is made without fair consideration; (2) if, at

the time of a transfer, the transferor was a defendant in any action for money damages or had a

judgment docketed against him and failed to satisfy that judgment; or (3) a conveyer was insolvent

at the time of a transfer or was left with unreasonably small capital after a transfer.  *See* N.Y.

DEBTOR AND CREDITOR LAW §§ 273-5 (2001).  Because the Plaintiff's arguments in the present case

center on the New York Court's finding of actual fraud under § 276, that provision will be the focus

of analysis.

9

Section 276 provides that a conveyance will be set aside as actually fraudulent where it is "found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors."  N.Y. DEBTOR AND CREDITOR LAW § 276 (2001); *see also Scola v. Morgan*, 412 N.Y.S.2d 893, 896-97 (N.Y. App. Div. 1979) (finding that debtor's fraudulent transfers were effected with an actual intent to defraud creditors, as opposed to intent presumed in law, and "[u]nder such circumstances, the conveyance was in actual fraud of a creditor").  To assert a claim under § 276, a plaintiff must demonstrate through clear and convincing evidence that: "(1) the thing transferred has value of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by [the] debtor; and (3) the transfer was done with actual intent to defraud."  *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1, 37, 38 (Bankr. E.D.N.Y. 2006) (citing *Kittay v. Flutie N.Y. Corp. (In re Flutie Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004)).

Because direct evidence of a debtor's intent to hinder his creditors is rare, creditors may rely on badges of fraud to serve as circumstantial evidence of actual intent.  *E.g. Sullivan v. Messer (In re Corcoran)*, 246 B.R. 152, 161 (E.D.N.Y. 2000).  Such badges include: (1) a lack or inadequacy of consideration; (2) a close relationship between the parties; (3) the retention, possession, benefit, or use of the property in question by the debtor; (4) the financial condition of the transferor both before and after the transaction in question; and (5) the shifting of assets by the debtor to a corporation wholly controlled by him.  *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 (2d Cir. 1983); *Nisselson*, 340 B.R. at 38.

10

With respect to veil piercing, New York law requires a showing that: (1) "the [corporation's] owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Matter of Morris v. N. Y. State Dept. of Taxation & Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. 1993); *see also Austin Powder Co. v. McCullough*, 628 N.Y.S.2d 855, 857 (N.Y. App. Div. 1995) (stating that even absent fraud, the corporate veil will be pierced "when a corporation has been so dominated by an individual or another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego").

Generally considered in determining whether to pierce the corporate veil are such factors as "whether there is an overlap in ownership, officers, directors and personnel, inadequate capitalization, a commingling of assets, or an absence of separate paraphernalia that are part of the corporate form." *Matter of Island Seafood Co. v. Golub Corp.*, 759 N.Y.S.2d 768, 770 (N.Y. App. Div. 2003); *John John, LLC v. Exit 63 Dev., LLC*, 826 N.Y.S.2d 657, 659 (N.Y. App. Div. 2006).

These principles in mind, we now turn to the Plaintiff's claims for nondischargeability under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.

## III.   Dischargeability of the Plaintiff's Claim

The fundamental goal of bankruptcy is to afford debtors a fresh start. *See Cochran v. Reath (In re Reath)*, 368 B.R. 415, 421 (Bankr. D.N.J. 2006). Accordingly, exceptions to discharge must be construed strictly against creditors and liberally in favor of debtors. *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995). Still, the Bankruptcy Code is meant to discharge only the honest but unfortunate debtor. *E.g. Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Thus,

11

Congress adopted § 523 of the Bankruptcy Code " to discourage fraudulent conduct and to ensure that relief intended for honest debtors does not inure to the benefit of the dishonest." *Starr v. Reynolds (In re Reynolds)*, 193 B.R. 195, 200 (D.N.J. 1996) (citing *Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1130 (8th Cir. 1985)).

In the present case, the Plaintiff contends that its debt is nondischargeable under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code. Section 523(a)(2)(A) of the Bankruptcy Code provides that debts for money, property, or services obtained by "false pretenses, a false representation, or actual fraud" are nondischargeable. 11 U.S.C. § 523(a)(2)(A) (2006). Section 523(a)(4) provides that debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, and larceny" are nondischargeable. 11 U.S.C. § 523(a)(4). Lastly, § 523(a)(6) states that a debtor will not be discharged from any debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

In support of its arguments, the Plaintiff relies in part on the doctrine of collateral estoppel, reasoning that because the corporate veils of JRC Millworks and International Mill were pierced and the Defendant was found liable under § 276, the issue of actual fraud is established and need not be relitigated in the present case. This Court must therefore determine first whether the New York Court's finding of actual fraud is entitled to collateral estoppel effect.

**A.    Collateral Estoppel**

Collateral estoppel (a.k.a. "issue preclusion") prohibits the relitigation of issues of law or fact that have been adjudicated in a prior lawsuit. *See Tonka Corp. v. Rose Art. Indus., Inc.*, 836 F. Supp. 200, 211 (D.N.J. 1993) (citing *N.J.-Phila. Presbytery of the Bible Presbyterian Church v. N.J. State Bd. of Higher Educ.*, 654 F.2d 868, 876 (3d Cir.1981)). It is well settled that the doctrine applies

12

in proceedings concerning the dischargeability of debts and therefore may prevent the relitigation

of issues relevant to the dischargeability of a debt. *E.g. Grogan v. Garner*, 498 U.S. 279, 284-285

n.11 (1991); *Graham v. IRS (In re Graham)*, 973 F.2d 1089, 1097 (3d Cir. 1992).

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must accord judicial

proceedings brought in a state tribunal the "same full faith and credit . . . as they have by law or

usage in the courts of such State. . . ." 28 U.S.C. § 1738. Federal courts must accordingly "defer

to the law of preclusion of the state in which a judgment was rendered." *Marrese v. Am. Acad. of

Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Allegheny Int'l Inc. v. Allegheny Ludlum Steel

Corp.*, 40 F.3d 1416, 1429 (3d Cir 1994). Here, the prior judgment at issue was rendered by the

Supreme Court of the State of New York, New York County. Thus, the doctrine of collateral

estoppel as articulated by New York courts will be applied.

New York collateral estoppel principles prevent "a party from relitigating 'an issue which

has previously been decided against him in a proceeding in which he had a fair opportunity to fully

litigate the point.'" *Deutsch v. Integrated Barter Int'l, Inc.*, 700 F. Supp. 194, 196-97 (S.D.N.Y.

1988) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1981)). Two requirements must

be satisfied before collateral estoppel will be invoked: (1) the identical issue must have been

"necessarily" decided in the prior action and be decisive in the present action; and (2) the party to

be precluded must have had a full and fair opportunity to litigate the issue in the prior action. *See,

e.g.*, *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006); *Deutsch*, 700 F. Supp. at 197 (citing

*Kaufman*, 482 N.E.2d at 67).

While the party seeking the benefit of the doctrine has the burden of demonstrating the

identity of the issues in the present and prior determinations, the party resisting its application has

13

the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior

action. *Deutsch*, 700 F. Supp. at 197. Additionally, the merits of a prior decision are not the focus

of a court's collateral estoppel analysis; rather, unless it appears that a judgment was procured by

collusion or fraud, or that the rendering court lacked jurisdiction, "[a] bankruptcy court's review is

limited to determining whether the state law elements for collateral estoppel are satisfied." *Kelleran*

*v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987).

(1) <u>Identity of the Issues</u>

To sustain the burden of showing identity of the issues, a party seeking to invoke collateral

estoppel must "introduce a record sufficient to reveal the controlling facts and pinpoint the exact

issues litigated in the prior action." *Revelle Motors, Inc. v. Spector (In re Spector)*, 22 B.R. 226, 231

(Bankr. N.D.N.Y. 1982); *Nate B. & Francis Spingold Found., Inc. v. Halperin (In re Halperin)*, 215

B.R. 321, 336 (Bankr. E.D.N.Y. 1997) (stating that a bankruptcy court must "carefully examine the

record of the state court proceeding"); *Ariz. Tomato, LLC v. Guccione (In re Guccione)*, 268 B.R.

10, 16 (Bankr. E.D.N.Y. 2001) (finding no identity of issues where plaintiff could not point to any

portion of record where the parties had contested issues pertinent to dischargeability). Indeed,

collateral estoppel effect will only be given to matters "actually litigated and determined" in a prior

action, meaning that a matter must have been properly raised by the pleadings and specifically

considered and decided by the prior court. *See Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006);

*Denton v. Hyman (In re Hyman)*, 320 B.R. 493, 504 (Bankr. S.D.N.Y. 2005) (finding no identity of

issues because not one of the issues needed in finding nondischargeability was briefed by parties or

considered by the prior court); *Halperin*, 215 B.R. at 335 (stating that elements for a § 523(a) claim

must be specifically considered and decided by the state court before collateral estoppel will apply).

14

Still, where a judgment is "decided from the bench" and not supported by specific findings of fact, courts will infer that an issue was considered and decided so long as it is a "necessary inference" from the prior judgment.  *See Revelle*, 22 B.R. at 232; *Halperin*, 215 B.R. at 336-37 (refusing to infer that issue of fraud was decided by state court where there was a "crucial distinction" between engaging in a fraudulent transfer of property and incurring a debt through fraud under § 523(a)(2)).  In *Revelle*, for example, judgment was entered against a debtor in a New York court for fraudulently uttering "bad" checks.  *Revelle*, 22 B.R. at 229.  Although the state court did not specifically find that the debtor had uttered the checks with fraudulent intent, the United States Bankruptcy Court for the Northern District of New York, in determining identity of the issues, found that such intent was a "necessary inference" from the prior judgment.  *Id.* at 232.

Next, for collateral estoppel to apply, a party seeking the benefit of the doctrine must demonstrate that the legal standards employed in a prior proceeding are "substantially identical" to those employed in a subsequent proceeding.  *See Halperin*, 215 B.R. at 335; *Revelle*, 22 B.R. at 231-32 (stating that for collateral estoppel to apply, "the standards employed by the state court in reaching its decision must comport with federal standards") (quoting *Matter of Supple*, 14 B.R. 898, 903 (Bankr. D. Conn. 1981))); *Cooper v. Zois (In re Zois)*, 269 B.R. 89, 98 (Bankr. S.D.N.Y. 1999) ("The issue as to which preclusion is sought must be identical to the issue decided in the prior proceeding.").  New York courts have frequently found, for example, that the elements for establishing "actual fraud" under § 523(a)(2)(A) are identical to the elements for common-law fraud, and thus, in proceedings arising under § 523(a)(2)(A), state judgments entered for common-law fraud are entitled to preclusive effect.  *See Evans*, 469 B.R. at 283 (holding that the elements of actual fraud under the bankruptcy code incorporate the general common law of torts); *Wharton v.*

15

*Shiver (In re Shiver)*, 396 B.R. 110, 127 (Bankr. S.D.N.Y. 2008) ("The elements of actual fraud under the Bankruptcy Code incorporate the general common law of torts and likewise include a false representation, scienter, reliance, and harm.").

New York courts have also demonstrated a reluctance to apply collateral estoppel where the specific standard for fraud used by the state court was not specified, making it possible that: (1) the state court did not use a standard for fraud that was identical to the nondischargeability standard under § 523(a)(2)(A); or (2) the finding of fraud arose from "an implied fraud determination" inferred from a violation of statute.  *See Revelle*, 22 B.R. at 233 (declining to apply collateral estoppel where state court's finding of fraud may have derived from bad check law in New York's penal code since "the bankruptcy standards for 'actual fraud' do not countenance implied fraud determinations"); *Cochran v. Reath (In re Reath)*, 368 B.R. 415, 422 (Bankr. D.N.J. 2006) (stating that in establishing a claim under § 523(a)(2)(A), "[f]raud implied in law which may exist without imputation of bad faith or immorality, is insufficient" (citing 4 COLLIER ON BANKRUPTCY ¶ 523.08 [1][d] at 523-44.9 (Lawrence P. King et al. eds., 15th ed. rev. 2006))).

In the present case, the Plaintiff asserts that the elements considered in piercing the corporate veil and in finding that the Defendant engaged in actual fraud under § 276 are identical to the elements required to establish nondischargeability under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.  This Court agrees with this assertion only insofar as it pertains to § 523(a)(6).

Claims arising under § 523(a)(6) of the Bankruptcy Code require a showing that a debtor's actions were "willful" and "malicious." *See* 11 U.S.C. § 523(a)(6).  Actions are considered willful and malicious if "they either have a purpose of producing injury or have a substantial certainty of

16

producing injury." *Conte v. Gautum (In re Conte)*, 33 F.3d 303, 307 (3d Cir. 1994). Courts have

further treated actions undertaken with an intent to defraud or derogate the rights of creditors as

establishing that a debtor acted with a "purpose of producing injury" and thus "willfully and

maliciously" for purposes of § 523(a)(6). *See Navistar v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87, 88

(2d Cir. 1996) (holding that the debtor's diversion of vehicle sale proceeds had no justification

except to harm the interests of creditors and thus was willful and malicious under 523(a)(6)); *Elliott

v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 750 (Bankr. W.D. Pa. 2008); *Strum v. Bressler (In

re Bressler)*, 387 B.R. 446, 457 (Bankr. S.D.N.Y. 2008) (declining to apply collateral estoppel where

prior judgment did not provide sufficient detail showing that the debtor had intended to injure the

plaintiff and thus acted with malice); *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 262 (Bankr.

S.D.N.Y. 2000) (finding that the debtors' actions in transferring property to avoid creditors was

"specifically calculated" to frustrate creditors' rights and thus constituted willful and malicious

conduct).

 In *In re Kiesewetter*, for example, judgment was entered against a debtor in a Pennsylvania

court for fraudulently appropriating assets from his family's estate into personal bank accounts.

*Kiesewetter*, 391 B.R. at 750. Emphasizing the jury's finding that the debtor had acted in bad faith

and with "an intent to defraud and deceive" his plaintiff family members, the United States District

Court for the Western District of Pennsylvania concluded that the debtor's conduct "had the purpose

of producing injury, or was done with substantial certainty of producing injury to the Plaintiffs in

the form of the loss of funds," and thus the debt was nondischargeable under § 523(a)(6). *Id.* at 750.

 Here, although the New York Court did not make a *specific* finding as to whether the

Defendant acted with an actual intent to defraud his creditors, such a finding is a "necessary

inference" from the judgment since it is an element of a § 276 claim. Furthermore, because precedent establishes that actions undertaken with an actual intent to defraud can serve as a basis for finding that conduct is "willful and malicious," the analysis engaged in by the state court in imposing liability under § 276 would likely be similar to that of this Court in determining nondischargeability. Thus, there is identity of issues between the New York Court action and the claim arising under § 523(a)(6) in this proceeding.

Additionally, the Defendant's intent to defraud creditors is decisive of the present action since a claim cannot be excepted from discharge under § 523(a)(6) unless a debtor's actions are intentional and wrongful. Accordingly, with respect to the Plaintiff's § 523(a)(6) claim, the first prong required in applying the doctrine of collateral estoppel is met.

With respect to §§ 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code, the legal standards for establishing claims under these provisions are *not* substantially similar to the legal standards for establishing a claim under § 276 or for piercing the corporate veil. To establish a claim based on actual fraud under § 523(a)(2)(A), a party must prove by a preponderance of the evidence that: (1) the debtor made a misrepresentation; (2) at the time, the debtor knew the misrepresentation was false; (3) the debtor made the misrepresentation with the intent and purpose of deceiving the creditor; (4) the creditor relied on the misrepresentation; and (5) the creditor sustained the alleged loss and damages as a proximate result of the misrepresentation. *See, e.g.*, *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 165 (Bankr. E.D. Pa. 2008); *Reath,* 368 B.R. at 422. A claim under the fiduciary duty prong of § 523(a)(4) further requires a plaintiff to prove that: (1) the debt in issue arose while the debtors were acting in a fiduciary capacity as to the creditor; and (2) an express trust relationship existed between the debtor and the creditor in which the latter was the trustee and the

former was the beneficiary.  *Spencer v. Blanchard (In re Blanchard)*, 201 B.R. 108, 116 (Bankr. E.D. Pa. 1996).  Each of these standards requires the consideration of elements not required in imposing liability under § 276 or in piercing the corporate veil, and thus the standards employed by the state court do not comport with the standards that would be considered by this Court in determining nondischargeability.[9]

Importantly, the record demonstrates that the elements required for a claim under §§ 523(a)(2)(A) and 523(a)(4) were not "actually litigated" or specifically decided by the New York Court.  The Plaintiff has offered a copy of the summary judgment motion it filed in the New York action as well as a copy of the judgment rendered in that action.  The motion sets forth the Plaintiff's claim under § 276 and to pierce the corporate veil and contains factual assertions supporting those claims.  As shown above, however, the standards for a § 276 claim and for veil piercing do not incorporate all of the elements required for nondischargeability under §§ 523(a)(2)(A) and 523(a)(4), and thus those additional elements needed to establish nondischargeability were not raised in the pleadings.

Moreover, even if the requisite elements for nondischargeability under §§ 523(a)(2)(A) and 523(a)(4) *had* been raised in the pleadings, these elements were not specifically decided by the New York Court.  Indeed, the state court's order was a "bench opinion" and lacked findings of fact.  Certainly, as mentioned above, this Court can infer that the state court considered and decided the elements for a § 276 claim, which include the Defendant's actual intent to defraud his creditors.  *See Revelle*, 22 B.R. at 229.  However, this Court cannot infer that the state court necessarily considered

---

[9]  While intent to defraud or deceive creditors is an element of both a § 276 claim and a § 523(a)(2)(A) claim, the additional factors needed to establish nondischargeability under § 523(a)(2)(A), such as the existence of a misrepresentation, reliance, and proximate cause, were neither raised in the pleadings nor decided by the New York Court.

and decided the additional elements required for establishing nondischargeability under §§ 523(a)(2)(A) and 523(a)(4), as those elements are not incorporated into the legal standards for § 276 or for veil piercing.

Lastly, with respect to the Plaintiff's § 523(a)(2)(A) claim, although liability under § 276 is regarded as actual fraud, inferences of fraud from statutory violations do not equate to the "actual fraud" contemplated by § 523(a)(2)(A).  *See e.g., id.* at 233 (specifying that the type of fraud inferred from a statutory violation does *not* equate to fraud under the discharge provisions in bankruptcy).  Thus, we find that the issues decided in the New York Court action are identical only to the issues that would be considered by this Court in determining nondischargeability under § 523(a)(6).[10]

### (2) Full and Fair Opportunity to Litigate

Under New York law, a full and fair opportunity to litigate may be afforded where a prior action resulted in a default judgment.  *E.g. Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006); *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) ("A [bankruptcy court] [] [is] bound to the liability determination in the state [default] judgment unless an exception exists, such as a judgment

---

[10]  The Plaintiff asserts two alternative arguments in support of its assertion that the Defendant is liable to the Plaintiff in the amount of $515, 296.34 for "judgments sounding in fraud."  (See Mem. of Law in Supp. of Pl.'s Mot. for Summ. J., at 11-14.)  First, the Plaintiff argues that the August 2007 judgment piercing the corporate veil was based upon the Defendant's actually fraudulent transfers and thus the entire amount of the judgment is based in actual fraud.  (*Id.* at 11-12.)  Second, the Plaintiff asserts that in piercing the corporate veil, the August 2007 judgment held the Defendant personally liable for actual fraud.  Furthermore, because both the value of the fraudulently transferred assets and the amount of the judgment imposed for the fraudulent transfer of assets exceeds the $515,296.34 in total judgments, the entire amount owing to the Plaintiff is due to actual fraud.  (*Id.* at 12-14.)  It is unclear to this Court as to why the Plaintiff engaged in this analysis as there does not appear to be a dispute as to whether the New York Court's judgment was grounded in a finding of actual fraud.  Indeed, courts interpreting § 276 have regarded violations of that provision as constituting "actual fraud" on several occasions.  *See Scola v. Morgan*, 412 N.Y.S.2d 893, 896-97 (N.Y. App. Div. 1979) (finding that where debtor's fraudulent transfers were effected with an actual intent to defraud creditors, "the conveyance was in actual fraud of a creditor"); *Sullivan v. Messer (In re Corcoran)*, 246 B.R. 152, 159 (E.D.N.Y. 2000) (stating that "a conveyance is 'actually' fraudulent if it is made with 'actual intent,' as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors).

was procured by collusion or fraud, or where the rendering court lacked jurisdiction."); *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 130 (Bankr. S.D.N.Y. 2008) ("New York gives collateral estoppel effect to issues 'necessarily decided' by the default judgment.").

In *Evans v. Ottimo*, for example, the Court of Appeals for the Second Circuit found that debtors were afforded a full and fair opportunity to litigate the issue of fraud in state court although the action had resulted in a default judgment. *Evans*, 469 B.R. at 282. Noting that the debtors were properly served with process and thus had an opportunity to contest the allegations, the court explained that "when a party defaults by failure to answer . . . the defaulting litigant may not further contest the liability issues." *Id.* (citing *Kelleran*, 825 F.2d at 694).

Here, the Defendant was likewise served with process in the Plaintiff's state action to hold him liable for the acts and omissions of JRC Millworks and International Mill and could have accordingly contested these allegations. Thus, under New York law, the Defendant had a full and fair opportunity to litigate in the prior action.

Because both prongs required for collateral estoppel are met, in determining nondischargeability under § 523(a)(6), the issue of whether the Defendant acted with an actual intent to defraud is established and need not be relitigated.

### B.    Dischargeability under Section 523(a)(6)

Section 523(a)(6) of the Bankruptcy Code states that a debtor will not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2006). "Willful" conduct is defined as that which is "voluntary, intentional, or deliberate." *Cochran v. Reath (In re Reath)*, 368 B.R. 415, 426 (Bankr. D.N.J. 2006) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3 (1998)). "Debts arising from

21

recklessly or negligently inflicted injuries [thus] do not fall within the compass of section 523(a)(6)).” *Kawaauhau*, 523 U.S. at 64.  Furthermore, conduct is “malicious” if a debtor’s act is “wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.” *See Wymard v. Ali (In re Ali)*, 321 B.R. 685, 693 (Bankr. W.D. Pa. 2005) (citing 4 COLLIER ON BANKRUPTCY ¶ 523.12[1] at 523-91 (Matthew Bender 2004)).

The Supreme Court of the United States has not specified the state of mind required in finding willful and malicious injury.  *See generally Kawaauhau*, 523 U.S. at 61-62, 64; *see also Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 749 (Bankr. W.D. Pa. 2008).  However, the Court of Appeals for the Third Circuit appears to have adopted an “objective approach,” under which actions will be considered willful and malicious if they “either have a purpose of producing injury or have a substantial certainty of producing injury.”  *See Conte v. Gautum (In re Conte)*, 33 F.3d 303, 307 (3d Cir. 1994); *Kiesewetter*, 391 B.R. at 749.  In *In re Conte*, the court explained that

> [i]ntent is not . . . limited to consequences which are desired.  If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

*Conte*, 33 F.3d at 308.

As explained above, courts have treated actions undertaken with an intent to defraud or derogate the rights of creditors as establishing that an act was undertaken with the “purpose of producing injury” and thus was “willful and malicious” for purposes of § 523(a)(6).  *See, e.g.*, *Navistar v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87, 88 (2d Cir. 1996); *Kiesewetter*, 391 B.R. at 750; *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 262 (Bankr. S.D.N.Y. 2000).  Based on this precedent, because the Defendant’s actual intent to defraud is established under the doctrine of collateral estoppel in the present case, this Court in turn concludes that the Defendant’s fraudulent

22

conveyances of assets to himself and from JRC Millworks to International Mill were "willful and malicious" under § 523(a)(6).

Even without the application of the doctrine of collateral estoppel, however, this Court can conclude that the Defendant's actions were willful and malicious under § 523(a)(6). The Defendant has both undergraduate and graduate degrees in accounting and experience working in a top accounting firm. The Defendant also stated that he was aware of JRC Millworks' cash flow problems at the time of the transfer. This knowledge and educational background, combined with the fact that JRC Millworks transferred substantially all of its assets to International Mill for no consideration, convinces this Court that the Defendant's actions went beyond "mere negligence or inadvertence." *See Kovler*, 249 B.R. at 262. On the contrary, even if he was not the "actual owner" of the company or responsible for all of its business decisions, the Defendant understood that the transfer from JRC Millworks to International Mill would destroy JRC Millworks' ability to repay its debts and undermine the rights of its creditors. Accordingly, this Court finds that the Defendant acted with at least a "substantial certainty of producing injury" to creditors and thus his actions were willful and malicious under § 523(a)(6).

### C.   Dischargeability under Section 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code states that an individual will not be discharged from any debt arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (2006). To sustain a cause of action under the "fiduciary duty" prong of this provision, a plaintiff must prove that the debt in question arose while the debtor was "acting in a fiduciary capacity as to them." *Spencer v. Blanchard (In re Blanchard)*, 201 B.R. 108, 116 (Bankr. E.D. Pa. 1996). Moreover, the fiduciary relationship cannot arise from wrongful

conduct itself; instead, such relationships "must have existed prior to or independent of the particular transaction from which the debt arose." *Int'l Fidelity Ins. Co. v. Marques (In re Marques)*, 358 B.R. 188, 194 (Bankr. E.D. Pa. 2006).

A "fiduciary" is traditionally defined as one who is in a relationship of trust, confidence, and good faith. However, for purposes of § 523(a)(4), courts have narrowed this definition to situations where a debtor "hold[s] an express or technical trust on behalf of a beneficiary (creditor)." *Marques*, 358 B.R. at 194 (citing *Harris v. Dawley (In re Dawley)*, 312 B.R. 765, 777 (Bankr. E.D. Pa. 2004)). State law is used in determining whether such a trust relationship exists, and in the present case, the issue of which state's law applies is governed by New Jersey's choice of law rules. *See State of New Jersey v. Kaczynski (In re Kacszynski)*, 188 B.R. 770, 773 (Bankr. D.N.J. 1995) (stating that state law is used in determining whether an express trust exists); *see also LaSala v. Bordier Et Cie*, 519 F.3d 121, 140 (3d Cir. 2008) (explaining that the choice of law rules to be applied by federal courts must conform with "those prevailing" in the state in which the court is located (citing *Klaxon Co. v. Stentor Electric Mftg. Co.*, 313 U.S. 487, 496 (1941))).

According to New Jersey's choice of law rules, the law of the state of incorporation governs internal corporate affairs. *Stanziale v. Dalmia (In re Allserve Sys. Corp.)*, 379 B.R. 69, 79 (Bankr. D.N.J. 2007) (stating that "internal affairs" includes matters that are "peculiar to the relationship among or between the corporation and its current officers, directors, and shareholders"). Here, because both Plaintiff and JRC Millworks were incorporated in New York, New York law will be applied.

Under New York law, the trust requirement under § 523(a)(4) extends "to relationships in which 'technical trust type' obligations are imposed pursuant to statute or common law." *Shearson*

*Lehman Hutton, Inc. v. Schulman (In re Schulman)*, 196 B.R. 688, 697-98 (Bankr. S.D.N.Y. 1996). It is on this basis that the Plaintiff claims that New York's Trust Fund Doctrine applies and gives rise to a fiduciary relationship between the Plaintiff and the Defendant at the time of the fraudulent transfers from JRC Millworks to International Mill.  Under the Trust Fund Doctrine, "officers and directors of an insolvent corporation are said to hold the remaining corporate assets in trust for the benefit of its general creditors." *Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 729 N.E.2d 683, 688 (N.Y. 2000) (citing *New York Credit Men's Adjustment Bureau v. Weiss*, 110 N.E.2d 397, 398 (N.Y. 1953)).

The Plaintiff argues that JRC Millworks was insolvent when it transferred assets to International Mill, and thus the Defendant, as an officer and director of the JRC Millworks, owed a fiduciary duty to the Plaintiff at that time.  The Plaintiff further contends that the Defendant can be regarded as an officer or director of JRC Millworks because: (1) he worked on the company's premises on a daily basis; (2) he received a significant salary; and (3) the New York Court declared him to be an alter ego of the company and pierced the corporate veil to hold him liable for its acts and omissions.

This Court is not convinced, however, that the Defendant can be considered an officer or director of JRC Millworks.  First, as the Plaintiff acknowledges, there are no records or other documentation showing that the Defendant was an officer or director of the company.  Second, a finding that the Defendant was an alter ego of JRC Millworks does not necessarily mean that he held the official role of an officer or director of that company so as to be accountable to its creditors under the Trust Fund Doctrine.  Lastly, the Defendant has certified that he was not a shareholder, officer, or director of JRC Millworks; rather, he worked as a physical laborer.  Given these factors,

this Court finds that: (1) the Plaintiff has failed to establish that the Defendant was an officer or director of JRC Millworks; and (2) the Trust Fund Doctrine accordingly does not provide a basis for a fiduciary relationship between the Defendant and the Plaintiff at the time of the fraudulent transfers.  Thus, the Plaintiff's debt is not excepted from discharge under § 523(a)(4).

### D.    Dischargeability under Section 523(a)(2)(A)

Section 523(a)(2)(A) states that debts for money, property, or services obtained by "false pretenses, a false representation, or actual fraud" are nondischargeable. 11 U.S.C. § 523(a)(2)(A) (2006).  To prevail on a claim under this section, a party must prove by a preponderance of the evidence that: (1) the debtor made a misrepresentation; (2) at the time, the debtor knew the misrepresentation was false; (3) the debtor made the misrepresentation with the intent and purpose of deceiving the creditor; (4) the creditor relied on the misrepresentation; and (5) the creditor sustained the alleged loss and damages as a proximate result of the misrepresentation.  *See, e.g.*, *Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 165 (Bankr. E.D. Pa. 2008); *Cochran v. Reath (In re Reath)*, 368 B.R. 415, 423 (Bankr. D.N.J. 2006).

Courts interpreting § 523(a)(2)(A) have regarded false pretenses, false representations, and actual fraud as "somewhat different concepts," although a claim based upon any of these actions requires a showing of each the above factors.  *See Giquinto*, 388 B.R. at 165 & n.26 (setting forth the elements for all § 523(a)(2)(A) claims but also noting the distinction between false pretenses, false representations, and actual fraud); *Reath*, 368 B.R. at 422-23 (applying the same five-pronged standard in finding that the debtor's actions did not constitute false representations, false pretenses, or actual fraud); *Wymard v. Ali (In re Ali)*, 321 B.R. 685, 690 (Bankr. W.D. Pa. 2005) (explaining

that claims based on false pretenses and false representations require a showing of knowledge at the time of the representation, intent to deceive, reliance, and proximate cause).

"Actual fraud" is more expansive than a mere misrepresentation and "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind . . . ." *Reath*, 368 B.R. at 422 (citing *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995)); *see also McClellan v. Cantrell*, 217 F.3d 890, 892-893 (7th Cir. 2000) (taking position that actual fraud is broader than misrepresentation); *Elliott v. Kiesewetter (In re Kiesewetter)*, 391 B.R. 740, 746 (Bankr. W.D. Pa. 2008) (same).

"False pretenses" involves an implied misrepresentation promoted "knowingly and willfully" that "creates or fosters a false impression." *Giquinto*, 388 B.R. at 165 n.26; *Krenowsky v. Haining (In re Haining)*, 119 B.R. 460, 463 (Bankr. D. Del. 1990).  Lastly, a false representation involves a "false or misleading statement about something." *Giquinto*, 388 B.R. at 165 n.26 (citing *McLeod v. Barnaby (In re Barnaby)*, No. 05-33096, 2007 WL 750332, at *2 (Bankr. D.N.J. 2007)).

Here, the Plaintiff contends that the debt arising from the August 2007 judgment is excepted from discharge since the debt arose as a result of the Defendant's engaging in actual fraud, or in the alternative, false pretenses.  Specifically, the Plaintiff reasons that although the original debt owed to the Plaintiff was not incurred by fraud, the debt was "transformed" into one obtained by the Defendant's actual fraud or false pretenses when JRC Millworks diverted assets from its creditors by way of the fraudulent transfers to International Mill .  This argument fails, however, as the fact remains that the debts owed to the Plaintiff did *not* arise from any fraud or false pretenses on the part of the Defendant.

The Plaintiff also cites *In re Kovler* as support for its assertion that the Defendant engaged in false pretenses at the time of the transfer.  In *Kovler*, the debtors, husband and wife, were found liable under § 276 for fraudulently conveying their interest in their home to one another when faced with a legal malpractice suit.  *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 241-42, 259 (Bankr. S.D.N.Y. 2000).  In finding that the debt owed to the plaintiffs was nondischargeable under § 523(a)(2)(A), the United States District Court for the Southern District of New York reasoned that the debtors had "obtained something from their creditors" because the transfers caused their property to be free from creditors' claims.  *Id.* at 260.  In addition, while the elements for actual fraud were not met, the court held that the debtors had engaged in false pretenses since they had taken elaborate measures to hide their actions, including falsifying conveyance records, fabricating an agreement, procuring notarial misconduct, and repeatedly making false statements in court.  *Id.* at 261.  Finding that this was "not merely a case of a transfer of assets in derogation of creditors' rights," the court held that the debtors' actions "evidence[d] a conscious orchestration of deceptive or misleading conduct calculated to obtain or deprive another of property."  *Id.*

This Court likewise finds that the transfers from JRC Millworks to International Mill were "not merely a case of a transfer of assets in derogation of creditors' rights."  Indeed, the scheme of transferring assets for no consideration to a new but substantially similar business is a well-known fraudulent practice that evinces a concerted effort to undermine the rights of one's creditors.  Still, however, unlike *Kovler*, courts within this circuit require a showing of misrepresentation, reliance, and proximate cause to establish a claim based upon false pretenses, and the Plaintiff has neither proven by a preponderance of the evidence nor addressed several of these elements in establishing its § 523(a)(2)(A) claim.  *Compare Reath*, 368 B.R. at 422-23 (applying the same five-pronged

standard in determining whether the debtor engaged in false representations, false pretenses, or actual fraud), *with Kovler*, 249 B.R. at 260 (stating that "[t]he customary five elements required to establish "actual fraud" need not be shown to establish either 'false pretense' or 'false representation'"). Thus, § 523(a)(2)(A) does not provide a basis for nondischargeability in the present case.

## III.    Conclusion

For the reasons set forth above, the Plaintiff's motion for summary judgment is granted with respect to the § 523(a)(6) claim and Plaintiff's debt is hereby determined to be nondischargeable. An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

/s / *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: April 5, 2010